IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| CHIP W. NIX, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 1:24-CV-19 (LAG) |
| MICHAEL CALLAHAN and JAMES STEINBERG, | : |
| Defendants. | : |

## ORDER

Before the Court are Defendants Michael Callahan and James Steinberg's Motion to Dismiss (Doc. 8), and Plaintiff's Motion for Leave to Amend Complaint (Motion to Amend) (Doc. 15). For the reasons below, Defendants' Motion to Dismiss (Doc. 8) is **DENIED in part** and **GRANTED in part**, and Plaintiff's Motion to Amend (Doc. 15) is **GRANTED**.

## BACKGROUND

The Complaint in this case arises out of the 2019 prosecution of Plaintiff for jury tampering. (*See* Doc. 1). Plaintiff alleges that Defendant GBI Officers Callahan and Steinberg "initiated a meritless prosecution against Plaintiff Chip Nix with the aim of tarnishing his decades-long career as a law enforcement officer." (*Id.* ¶ 1).[1] On October 30, 2019, Defendant Callahan sought and obtained three warrants for Plaintiff's arrest on charges of "embracery." (*Id.* ¶ 7). Defendant Callahan was the affiant for the affidavit, and Defendant Steinberg directed Defendant Callahan to obtain the warrant. (*Id.* ¶ 9).

The first two warrants alleged that "Chip William Nix did knowingly, willingly, and unlawfully call Dan Humphrey on August 19, 2019[,] in an attempt to [i]nfluence [juror]

---

[1]   On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all facts alleged in Plaintiff's Complaint (Doc. 1) as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Anderson v. Wilco Life Ins.*, 17 F.4th 1339, 1344 (11th Cir. 2021) (citation omitted).

Stoney Lindsey," Humphrey's son-in-law, "who had been sworn and seated as a juror in the State v. James Gregory McDonald case # 17-CR-179." (*Id.* ¶ 10 (second alteration in original)). The third warrant alleged that the attempts to influence jurors in the *McDonald* case breached his oath of office as a police officer, in violation of O.C.G.A. § 16-10-1. (*Id.* ¶ 11).

Plaintiff alleges that before and after obtaining warrants against Plaintiff, Defendants knew that they had no evidence that Plaintiff attempted to influence Lindsey. (*Id.* ¶ 15). During the investigation related to these allegations, Humphrey told the defendant officers that Plaintiff called him during the *McDonald* trial, but Humphrey did not say that Plaintiff asked him to pass a message to Lindsey. (*Id.* ¶ 13). Phone records obtained by investigators showed that the phone call from Plaintiff to Humphrey was less than two minutes long. (*Id.* ¶ 14). Plaintiff called Humphrey again the same day, but the call went straight to voicemail and Plaintiff did not leave a message. (*Id.*). Plaintiff and Humphrey were acquainted before Humphrey's son-in-law was selected as a juror; and, according to Plaintiff, calls between the two were not unusual. (*Id.* ¶ 21). Plaintiff called Humphrey after the trial, "but . . . this was a permissible and routine attempt to see what the prosecution could [do] better in future trials." (*Id.* ¶ 19). Defendants did not disclose any of this information when applying for the warrants. (*Id.* ¶ 21). Furthermore, Lindsey told Defendants that no one had contacted him in any attempt to influence his vote or the verdict during the *McDonald* trial and no other jurors reported any attempt to influence the jury decision. (*Id.* ¶¶ 17–18). Plaintiff turned himself into the Decatur County Jail on October 30, 2019. (*Id.* ¶ 22).

Defendants also investigated Plaintiff for improperly influencing a juror the *State v. Murphy* trial, which occurred in 2017. (*Id.* ¶ 23). Around the time of the investigation into Plaintiff's alleged improper jury influence in the *Murphy* trial, Plaintiff was running for Sheriff of Decatur County. (*Id.* ¶ 24). Defendants alleged that, during the trial, Plaintiff called Cutchin, a juror and the son of Plaintiff's opponent in the Sheriff election, during the trial, "to ask him how things were going." (*Id.* ¶¶ 25, 28). Defendants obtained Plaintiff's phone records, but they were "were irreconcilable with [Plaintiff] having

contacted Cutchin during the trial." (*Id.* ¶ 31). Cutchin did not report any attempt to influence his vote during the *Murphy* trial at the time. (*Id.* ¶ 29). Plaintiff alleges that Defendants knew that Plaintiff only contacted Cutchin after the trial "to ask about why the jury convicted on one count and acquitted on the other." (*Id.* ¶ 33).

Finally, Defendants investigated Plaintiff for improperly influencing grand juror Raymond Powell, who served on a Decatur County grand jury in November 2019 and February 2020. (*Id.* ¶ 38). Powell told Defendants that Plaintiff did not contact him during his grand jury service. (*Id.* ¶¶ 40–41). Defendants based their allegations on a phone call between Plaintiff and Powell's ex-daughter-in-law during Powell's jury service. (*Id.* ¶ 42). Plaintiff and Powell's daughter-in-law did not discuss anything related to the allegations against Plaintiff or Powell's grand jury service. (*Id.*).

The state presented an indictment to a grand jury regarding the allegations connected to the *McDonald* and *Murphy* trials on May 4, 2021. (Doc. 8-2 at 9). The grand jury returned a no bill on the indictment. (*Id.*). On February 1, 2022, the state presented a second indictment to a different grand jury regarding the same allegations connected to the *McDonald* trial and the allegations regarding grand juror Powell. (*Id.* at 14). The grand jury again returned a no bill on the indictment. (*Id.*). While the criminal proceedings were ongoing, Defendants reported the allegations against Plaintiff to the Georgia Peace Officer Standards & Training Council (POST), the organization that regulates law enforcement officers; and POST initiated an investigation. (Doc. 1 ¶¶ 36, 46–47). While the criminal cases and POST's investigation were pending, Plaintiff was unable to obtain a job in law enforcement. (*Id.* ¶ 48).

Plaintiff filed this case in this Court on January 31, 2024. (*Id.*). Plaintiff brings two claims under 42 U.S.C. § 1983 against Defendants. (*Id.* ¶¶ 49–61). In Count I, Plaintiff brings a malicious prosecution claim pursuant to the Fourth Amendment against both Defendants based on their prosecution of Plaintiff for alleged improper jury influence in the *Murphy* and *McDonald* trials. (*Id.* ¶¶ 49–55). In Count II, Plaintiff brings a claim for free speech retaliation under the First Amendment, alleging that the *Murphy* investigation was brought in retaliation for Plaintiff's campaign to become sheriff of Decatur County.

3

(*Id.* ¶¶ 56–61). Defendants filed a Motion to Dismiss on May 8, 2024. (Doc. 8). Plaintiff responded on June 20, 2024, and Defendants replied on July 5, 2024. (Docs. 14, 16). On June 24, 2024, Plaintiff filed a Motion to Amend (Doc. 15), and Defendants responded on July 5, 2024. (Doc. 17). Plaintiff did not reply in support of the Motion to Amend. (*See* Docket). Both motions are ripe for review. *See* M.D. Ga. L.R. 7.3, 7.3.1(A).

## DISCUSSION

### I.   Motion to Amend

Plaintiff seeks to amend the Complaint to add the following facts regarding the time between the two indictments: (1) "[t]he local newspaper did not run a story on the 'no bill' because it learned that the District Attorney was going to present the case to another grand jury[,]" (2) "[Plaintiff], through his criminal defense attorney, requested records relating to his criminal case . . . but the State would not produce the records, citing the 'pending prosecution' exception to Georgia's Open Records Act[,]" (3) "[t]he State's criminal case file on [Plaintiff] did not contain a final investigative summary or final disposition, as is customary when closing a criminal case[,]" (4) "[t]he State told [Plaintiff] that it would be taking his criminal case to grand jury for a second time[,]" and (5) "[t]he State told [Plaintiff] that, if he would simply end his certification as police officer . . . it would not present a second indictment." (Doc. 15 at 3–4).

Here, because more than twenty-one days have passed since Plaintiff served the Complaint and Defendant responded, Plaintiff requests the Court's leave to amend. *See* Fed. R. Civ. P. 15(a); (*see also* Docket). Plaintiff's Motion is governed by Federal Rule of Civil Procedure 15. Under Rule 15, a plaintiff seeking to amend its complaint after the time for amendment as a matter of course has passed must obtain either "the opposing party's written consent or the court's leave[,]" and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court, however, may deny a motion to amend the pleadings where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment [.]" *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006)

(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Defendants argue that Plaintiff's Motion to Amend is futile because Plaintiff's malicious prosecution claim is still barred by the statute of limitations considering these facts. (Doc. 17 at 3–4).

Amendments are futile when they will "fail as a matter of law" or are subject to dismissal. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (per curiam); *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). "[T]he same standard of legal sufficiency as applied under a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is used to determine futility." *Bazemore v. U.S. Bank, N.A.*, 167 F. Supp. 3d 1346, 1355 (N.D. Ga. 2016) (first citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996); and then citing *Burger King Corp.*, 169 F.3d at 1315), *aff'd*, 692 F. App'x 986 (11th Cir. 2017). Rule 15 nevertheless "evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). Accordingly, absent "a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Burger King Corp.*, 169 F.3d at 1319 (quoting *Dussouy*, 660 F.2d at 598). "The party seeking leave to amend under Rule 15 bears the burden of establishing his entitlement to it . . . ." *In re Engle Cases*, 767 F.3d 1082, 1119 n.37 (11th Cir. 2014).

The addition of these allegations would not be futile as they support the argument that the prosecution of Plaintiff continued through the second no bill. (*See* Doc. 15 at 3–4). If that is the case, Plaintiff's malicious prosecution claim is not barred by the statute of limitations. *See Laskar v. Hurd*, 972 F.3d 1278, 1295 (11th Cir. 2020); *Fehrle v. Mayor of Savannah*, No. 4:22-cv-232, 2023 WL 4684913, at *4–5 (S.D. Ga. July 21, 2023). Furthermore, there is no reason to believe that Plaintiff filed this motion to amend in bad faith or that Defendants will be prejudiced at this early stage of the proceedings. *See Garfield*, 466 F.3d at 1270. Accordingly, upon review of Plaintiff's proposed additional facts to be added to the Complaint and the record, the Court finds no "substantial reason" to deny Plaintiff's Motion. *See Burger King Corp.*, 169 F.3d at 1319 (citation omitted). The Motion to Amend (Doc. 15) is **GRANTED**.

5

## II.  Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face if the complaint alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). A complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556. The Court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs[,]" but the same liberal reading does not apply to legal conclusions. *Anderson*, 17 F.4th at 1344–45 (first citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010); and then citing *Iqbal*, 556 U.S. at 678). "[A] plaintiff armed with nothing more than conclusions" cannot "unlock the doors of discovery[.]" *Iqbal*, 556 U.S. at 678–79. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

Defendants attached the warrants and "no bill" indictments to the Motion to Dismiss as an exhibit. (Doc. 8-2). A court ordinarily does not consider anything beyond the complaint and documents attached thereto when ruling on a motion to dismiss. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). There is an exception, however, for extraneous documents that are (1) referred to in the complaint, (2) central to the plaintiff's claims, and (3) of undisputed authenticity. *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (first citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); and then citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)). "[A] document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim." *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 771 (11th Cir. 2018) (per curiam) (second alteration in original) (quoting *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005)). Furthermore, "[w]hen ruling on a Rule 12(b)(6) motion to dismiss, the district court is

permitted to take judicial notice of public records without needing to convert the motion into a motion for summary judgment[.]" *Smith v. Sec'y Veteran Affs.*, 808 F. App'x 852, 853 (11th Cir. 2020) (per curiam) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276–78 (11th Cir. 1999)). "Under Federal Rule of Evidence 201, the district court may take judicial notice of a fact that is (1) generally known within the court's jurisdiction, and (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* (citing Fed. R. Evid. 201).

Here, the Court does not need to convert Defendants' Motion to Dismiss to a motion for summary judgment. *See id.* The exhibit is properly before the Court, central to the case, and is of unquestioned authenticity. *See Hi-Tech Pharms., Inc.*, 910 F.3d at 1189. The exhibit attached to the Motion to Dismiss consists of state court records from the proceedings in Plaintiff's criminal case. (Doc. 8-2). Defendants cite these documents to support the Motion to Dismiss. (*See* Doc. 8-1 at 6, 8; Doc. 8-2). Considering "prior court records, which [a]re referenced by [Defendants] in [their] motion to dismiss, [does] not require the court to convert the motion." *Smith*, 808 F. App'x at 854 (citing *Bryant*, 187 F.3d at 1276–78). Thus, the Court considers these exhibits and applies the Rule 12(b)(6) standard when reviewing Defendants' Motion to Dismiss. *See Overstreet v. Worth County*, No. 1:20-CV-95 (LAG), 2021 WL 6143569, at *3–4 (M.D. Ga. Mar. 10, 2021) (considering state court documents on a motion to dismiss based on the expiration of the statute of limitations), *aff'd*, No. 21-14391, 2022 WL 4007460 (11th Cir. Sept. 2, 2022).

### A. Malicious Prosecution (Count I)

Section 1983 claims are governed by Georgia's two-year statute of limitations for personal injury claims. *Nance v. Comm'r, Ga. Dep't of Corr.*, 59 F.4th 1149, 1153 (11th Cir. 2023) ("A claim brought under section 1983 is subject to the state statute of limitations governing personal injury actions, which is two years in Georgia." (citations omitted)). "Federal law determines when the statute of limitations period for § 1983 action begins to run." *Reid v. Republic Bank & Tr. Inc.*, 805 F. App'x 915, 916 (11th Cir. 2020) (per curiam) (citing *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003)). "[T]he statute of limitations for a civil rights action begins to run from the date that the cause of action accrues, which

7

occurs when 'the plaintiff has a complete and present cause of action' and 'can file suit and obtain relief.'" *Villalona v. Holiday Inn Express & Suites*, 824 F. App'x 942, 946 (11th Cir. 2020) (per curiam) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). A § 1983 "cause of action will not accrue until the plaintiff knows or should know (1) that he has suffered an injury that forms the basis of his actions and (2) the identity of the person or entity that inflicted the injury." *Id.* (citing *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003)). "To decide this issue, a court must first identify the injuries that the plaintiff allegedly suffered and then determine when the plaintiff could have sued for them." *Id.* (citing *Rozar v. Mullis*, 85 F.3d 556, 562 (11th Cir. 1996)).

A cause of action for malicious prosecution under the Fourth Amendment "accrues when the prosecution against the plaintiff terminates in his favor." *Laskar*, 972 F.3d at 1285 (citation omitted). Thus, the doctrine "will bar a suit for malicious prosecution . . . when the prosecution remains ongoing[.]" *Id.* (citations omitted). The Eleventh Circuit has explained that the "favorable-termination element requires only that the criminal proceedings against the plaintiff formally end in a manner not inconsistent with his innocence on at least one charge that authorized his confinement." *Id.* at 1295. Defendants argue that it is apparent from the face of the Complaint that the malicious prosecution claim accrued on May 4, 2021, when the grand jury entered a "no bill" on the first indictment because "the particular prosecution [of the charges] supporting [the October 30, 2019,] seizure terminated" with the entry of the no bill on the indictment. (Doc. 8-1 at 6 (emphasis omitted); *see* Doc. 1 ¶ 7). Plaintiff argues that the claim accrued when the second no bill was entered on February 1, 2022, because the criminal proceedings only formally came to an end once the Government determined not to bring the charges again. (Doc. 14 at 4).

Here, the two presentations to the grand jury constitute a continuous prosecution of Plaintiff. *See Fehrle*, 2023 WL 4684913, at *4–5 (finding malicious prosecution claim to be within statute of limitations because the state pursued a "continuous prosecution" against Plaintiff after dismissing case "nolle prosequi"). The criminal proceedings connected to the warrants that allowed the seizure in this case did not "formally end" for purposes of the statute of limitations until the grand jury returned a no bill on the second

8

indictment presented by the state. *Laskar*, 972 F.3d at 1295; (*see* Doc. 1; Doc. 8-2 at 14). After the jury returned a no bill on the first indictment, the state continued to pursue the prosecution against Plaintiff by presenting the case to a grand jury a second time and; thus, the prosecution remained ongoing until the grand jury returned a no bill on the second indictment. (Doc. 8-2 at 14); *see Fehrle*, 2023 WL 4684913, at *4–5. The facts alleged in the Motion to Amend further support this conclusion. (*See* Doc. 15). Plaintiff alleges that the state told Plaintiff's attorney that it would be bringing the case before a second grand jury after the first grand jury declined to indict and that it could not provide him with the documents relating to the criminal investigation due to the "pending prosecution[.]" (Doc. 15 at 3–4). Furthermore, Plaintiff alleged that he was still on bond after the grand jury entered the first no bill, indicating that the second indictment was connected to the original seizure that forms the basis for Plaintiff's claim. (*Id.* at 4). Defendants' argument that the two grand jury proceedings constitute different prosecutions is belied by the fact that the second indictment includes three of the same charges presented in the first indictment and relate to the same warrants. (*See* Doc. 8-1 at 5–7; Doc. 8-2 at 10–16).

The malicious prosecution claim accrued on February 1, 2022, when the grand jury entered a no bill on the second indictment presented by the state, and this case was brought within the applicable statute of limitations on January 31, 2024. (*See* Doc. 8-2 at 14). Thus, the claim is not time-barred.

### B. First Amendment Retaliation (Count II)

Defendants seek dismissal of Plaintiff's First Amendment Retaliation claim arguing that it is barred by the applicable statute of limitations. (Doc. 8-1 at 7–8). Defendants also argue that Plaintiff fails to state a First Amendment retaliation claim and that qualified immunity bars the First Amendment Retaliation claim. (*Id.* at 8–10). In Plaintiff's response, Plaintiff states, "[Plaintiff] does not oppose dismissal of his First Amendment retaliation claim." (Doc. 14 at 8 n.4). Absent objection, Count II is dismissed.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss (Doc. 8) is **DENIED in part** and **GRANTED in part**, and Plaintiff's Motion to Amend (Doc. 15) is **GRANTED**. The

Plaintiff shall file the amended complaint, with the facts outlined in the Motion to Amend, within **fourteen (14) days** of the date of this Order.

**SO ORDERED**, this 27th day of March, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**